IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

L'OCCITANE, INC.                        *
                                        *
v.                                      *
                                        *    Civil Action No. WMN-09-2499
TRAN SOURCE LOGISTICS, INC.             *
    <u>et al.</u>                       *
                                        *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

<u>**MEMORANDUM**</u>

Before the Court is Defendants' "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(6), and 12(b)(7)."  Paper No. 16.  Plaintiff opposed the motion.  Defendants did not file a reply and the time for so doing has now expired.  Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and the motion will be denied.

Plaintiff L'Occitane is a New York corporation engaged in the distribution and sale of cosmetics and fragrance products. Defendant Tran Source Logistics, Inc. (Tran Source) is a Maryland Corporation that offers transportation management services.  Defendant Howard Cates is a Pennsylvania resident and the president of Tran Source.  At all times relevant to this action, Tran Source and L'Occitane were parties to a contract whereby Tran Source agreed to serve as a conduit between L'Occitane and several of L'Occitane's third party vendors.

Pursuant to that agreement, Tran Source would forward invoices from these third party vendors to L'Occitane, L'Occitane would wire funds to Tran Source to cover the invoices, and Tran Source was to forward the payment to the vendor.

Between March 2009 and July 2009, L'Occitane used Tran Source conduit services to facilitate shipping services provided by a third party vendor, AFC Worldwide Express (AFC). According to the Complaint, L'Occitane wired amounts to Tran Source to pay the invoices submitted during that period but Tran Source wrongly retained $217,968.22 that should have been passed on to AFC. L'Occitane believes that "Mr. Cates withheld the funds, as a result of a personal dispute between Mr. Cates and AFC about a matter to which L'Occitane was not privy." Compl. ¶ 21. When the payment was not forwarded, AFC took steps to recover the funds directly from L'Occitane and also held certain goods belonging to L'Occitane pending payment.

L'Occitane filed suit on September 23, 2009, and asserted the following claims: breach of contract against Tran Source, conversion against Tran Source and Cates, and unjust enrichment against Tran Source and Cates. Two days after filing the Complaint, L'Occitane filed a motion for preliminary injunction. Paper No. 8. In that motion, L'Occitane requested that the Court enter an order preventing Defendants from dispersing or commingling the $217,968.22 that Tran Source received from

L'Occitane and requiring that they pay that sum into the Court registry.  On November 13, 2009, however, L'Occitane's counsel sent the Court a letter relating that he understood that the funds were already commingled, rending impossible the relief requested in the preliminary injunction motion.  Accordingly, counsel indicated that L'Occitane was withdrawing the motion for preliminary injunction.

In the pending motion to dismiss, Defendants make four arguments: (1) this Court has no personal jurisdiction over Defendant Cates; (2) Defendant Cates' is "immune" from suit due to the protection of the "corporate veil;" (3) the Complaint fails to state a claim for conversion; and (4) AFC is a "necessary and indispensable party to this action and in its absence, the Complaint should be dismissed.  The Court will address these issues seriatim.

When a court's personal jurisdiction over a nonresident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence."  Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003).  If jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer

3

ruling pending receipt at trial of evidence relevant to the jurisdictional question. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits and discovery materials, "the plaintiff need only make a prima facie showing of personal jurisdiction." Carefirst, 334 F.3d at 396; see also Combs, 886 F.2d at 676. In determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).

The court may assert either specific or general personal jurisdiction over a non-resident defendant. Specific jurisdiction may exist where the claim is related to or arises out of the defendant's contacts with the state. See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 and n.8 (1984). General jurisdiction may exist when the defendant's contact with the forum state is "continuous and systematic." Id. at 414-15 and n.9.

Furthermore, to determine whether it may exercise personal jurisdiction over a defendant, a court must perform a two-step inquiry. First, the court must determine if jurisdiction is authorized under the long-arm statute of the forum state. See

4

Carefirst, 334 F.3d at 396.  Second, the court must decide whether personal jurisdiction comports with Fourteenth Amendment due process requirements.  Id.  The Maryland Court of Appeals has held that Maryland's long-arm statute is co-extensive with the scope of jurisdiction permitted by the Fourteenth Amendment due process clause, and the statutory and constitutional inquiries therefore are generally held to merge.  See id., 334 F.3d at 396-97.

Here, L'Occitane asserts that this Court has both general and specific jurisdiction over Mr. Cates.  The allegation that Cates has served for numerous years as the president of a Maryland corporation which maintains an office in Maryland is at least a prima facie showing of continuous and systematic contact with Maryland.  L'Occitane has also submitted evidence that Cates comes and works in the Maryland office of Tran Source once a week.[1]  As for specific jurisdiction, L'Occitane notes that the Complaint alleges that Tran Source and Cates have improperly held on to L'Occitane's funds that were wired to a Maryland bank.  See Compl. ¶ 11.  The Court is satisfied that the Complaint contains allegations sufficient to support this

---

[1] That evidence is in the form of an affidavit from a process server.  Opp'n, Ex. B.  The process server relates that two women in the Tran Source office informed him that Cates "came into the office for a short time once a week."  While this might be hearsay evidence, the Court notes that Defendants do not challenge this representation.

Court's jurisdiction over Mr. Cates at this stage of the litigation and to allow the claims against him to go forward.

Turning to Cates' "corporate veil" argument, it is not clear whether it is raised as a further argument to show a lack of personal jurisdiction over him, as an argument that L'Occitane has failed to state a claim against him, or as both. Courts have applied the doctrine in both contexts.  This Court has held that there is "no basis whatsoever for holding that merely because a corporation transacts business in the state . . . or has other substantial contacts with the state, an individual who is its principal should be deemed to have engaged in those activities personally."  Birrane v. Master Collectors, Inc., 738 F. Supp. 167, 169 (D. Md. 1990).  In the "failure to state a claim" context, Maryland courts have recognized that, "[o]fficers and directors of a corporation generally are insulated from personal liability for the debts of the corporation."  Ferguson Trenching Co., Inc. v. Kiehne, 618 A.2d 735, 738 (Md. 1993).  Officers of a corporation, however, may be held personally liable for the tort of a corporation if he or she was personally involved in the commission of the tort.  Insurance Co. of North America v. Miller, 765 A.2d 587, 600 (Md. 2001).

It would appear that Defendants are asserting the corporate veil in support of a failure to state a claim argument as most

of the cases cited were decided in that context.  Regardless,
the argument is inapposite in either context.  L'Occitane has
alleged that Cates personally participated in the tortious
conduct because of a "personal dispute" between Cates and AFC.
If proven, that allegation is sufficient to remove any
protection the corporate veil might otherwise provide.

Defendants next move pursuant to Rule 12(b)(6) to dismiss
the conversion claim on the ground that it fails to state a
claim upon which relief can be granted.  To survive a Rule
12(b)(6) motion to dismiss, "a complaint must contain sufficient
factual matter . . . to 'state a claim to relief that is
plausible on its face.'"  Ashcroft v. Iqbal, --- U.S. ----, ----
, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Iqbal, 129 S.
Ct. at 1949 (citing Twombly, 550 U.S. at 556).  "Detailed
factual allegations" are not required, but allegations must be
more than "labels and conclusions," or "a formulaic recitation
of the elements of a cause of action[.]"  Iqbal, 129 S. Ct. at
1949 (quoting Twombly, 550 U.S. at 555).  "[O]nce a claim has
been stated adequately," however, "it may be supported by
showing any set of facts consistent with the allegations in the

complaint." <u>Twombly</u>, 550 U.S. at 563.   In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.   <u>Ibarra v. United States</u>, 120 F.3d 472, 474 (4th Cir. 1997).

Under Maryland law, "[a] 'conversion' is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it."   <u>Interstate Ins. Co. v. Logan</u>, 109 A.2d 904, 907 (Md. 1954).   As Defendants correctly observe, however, "[t]he general rule is that monies are intangible and, therefore, not subject to a claim for conversion."   <u>Allied Invest. Corp. v. Jasen</u>, 731 A.2d 957, 966 (Md. 1999).   Notwithstanding that general rule, the law allows an exception "when a plaintiff can allege that the defendant converted specific segregated or identifiable funds."   <u>Id.</u>   This exception extends not only to funds that were actually segregated, but also to funds that "should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction."   <u>Id.</u>

Here, Plaintiffs have alleged that "Tran Source had a contractual obligation promptly to pass on L'Occitane's payments to the appropriate, designated vendor, without commingling any

of those payments with any other funds or accounts." Compl. ¶

12; see also, id. ¶ 33. Plaintiffs also allege that Defendants

"never had any right to any portion of the funds that L'Occitane

wired to Tran Source" and yet they unlawfully retained the funds

sent to Tran Source "as part of segregated, identifiable

payments designated for AFC." Id. ¶¶ 34, 32. While Defendants

deny that they were under any obligation not to commingle

L'Occitane's funds (and Plaintiffs, in withdrawing their motion

for preliminary injunction, appear to concede that the funds

have been commingled), for purposes of ruling on a motion to

dismiss, the Court must accept Plaintiffs' allegations as true.

Thus, the Court will deny Defendants' motion as to the

conversion claim.

The Court also rejects Defendants' contention that the

entire complaint should be dismissed for failure to add AFC as a

"mandatory party." Under Rule 12(b)(7), a court can dismiss an

action for failure to join a party in accordance with Rule 19.

The analysis under a Rule 12(b)(7) motion to dismiss for failure

to join an indispensable party involves a two-step inquiry.

Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir.

1999). First, a court must determine whether the party is

"necessary" to the action pursuant to Rule 19(a). Id. The Rule

requires that the party be subject to service of process and

dictates that the party be joined if:

> (1) in the person's absence complete relief cannot be
> accorded among those already parties, or (2) the
> person claims an interest relating to the subject of
> the action and is so situated that the disposition of
> the action in the person's absence may (i) as a
> practical matter impair or impede the person's ability
> to protect that interest or (ii) leave any of the
> persons already parties subject to a substantial risk
> of incurring double, multiple, or otherwise
> inconsistent obligations by reason of the claimed
> interest.

Fed. R. Civ. P. 19(a).  Second, if the court deems the party

necessary, but the party cannot be joined because its joinder

would destroy diversity,  the Court must then consider whether

the party is indispensable pursuant to Rule 19(b) such that the

case must be dismissed.  Owens-Illinois, 186 F.3d at 440.  Under

Rule 19(b), "the court shall determine whether in equity and

good conscience the action should proceed among the parties

before it, or should be dismissed. . . ."

Relying on the proposition that "'a contracting party is

the paradigm of an indispensable party,'" Defendants argue that,

because AFC must have had a contract with Tran Source,

L'Occitane, or both, related to its provision of transportation

services, then AFC must be considered an indispensable party.

Mot. at 11, 12 (quoting Travelers Indem. Co. v. Household Int'l,

Inc., 775 F. Supp. 518, 527 (D. Conn. 1991)).  Defendants also

argue that AFC "undoubtedly has an interest in the subject of

this lawsuit, the $217,968.22," and that resolution of this

lawsuit without AFC could subject AFC, L'Occitane, or Defendants
to multiple liabilities.  Mot. at 12.

As to the first argument, the contract at issue here is the
contract between L'Occitane and Tran Source.  AFC is not party
to that contract and AFC's performance of a separate contract to
perform transportation services is not in dispute.  As to the
second argument, L'Occitane has submitted the declaration of its
Chief Financial Officer in which he states that L'Occitane has
paid AFC directly for all sums that were due AFC.  Decl. of
Wilfrid Poisnel ¶ 4.  He also declares that, with the receipt of
that payment, AFC "acknowledge[d] and agree[d that] . . .
all obligations of L'Occitane to AFC will be satisfied," and
that "[a]ny payments, in any amount, that may be received from
Tran Source Logistics, Inc., Howard Cates, or any one acting on
their behalf, or purporting to act on behalf of L'Occitane, will
be passed on immediately to L'Occitane."  Id. ¶ 5.  Thus, there
is no legitimate concern that this litigation, proceeding
without AFC, would results in any double, multiple or
inconsistent obligations.

For these reasons, Defendants motion to dismiss will be
denied in its entirety.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge

11

DATED: December 3, 2009